OPINION OF THE COURT
Antonio I. Brandveen, J.
The third-party defendant Schindler Elevator Corporation moves for an order granting summary judgment pursuant to CPLR 3212 dismissing the complaint of the infant plaintiff and her mother and the third-party plaintiff claims of the defendant Sears, Roebuck and Co. The defendant Seárs, Roebuck and Co. moves for an order granting summary judgment pursuant to CPLR 3212 dismissing the complaint of the infant plaintiff and her mother.
On July 28, 1996, at about 4:00 p.m., the plaintiff Leilany Lopez, then a three-year-old child, allegedly sustained a cut on her lower left leg from an object while on a descending escalator at the Sears, Roebuck store located in the Greenacres Shopping Center in Valley Stream, New York. The plaintiffs, the child and her then 33-year-old mother, were going shopping at a familiar place with the plaintiffs older sister and then 57-year-old maternal grandmother. They drove to Sears. The infant plaintiffs grandmother held the infant plaintiffs hand from the parking lot to the down escalator at Sears. The plaintiffs mother alleges the older daughter stepped on the escalator first, followed by her sister who held her grandmother’s left hand while the children’s mother stood behind everyone. They descended on the escalator which they used in the past without any problems or complaints. The plaintiffs mother maintained in a deposition on July 19, 1999 that she heard the plaintiff shout, “Mommy, my leg hurts.” The plaintiffs mother admitted in that same deposition that she was “looking at the perfume section” with none of the family talking to each other when her youngest daughter, the plaintiff, was injured. The maternal grandmother testified at a deposition on the same day that when her granddaughter yelled she picked the youngster up and saw “a hole” which looked like “raw flesh and it was like chopped meat.” The child allegedly sustained a gash on the outside portion of her left calf which left a scar. The maternal grandmother also testified an unidentified man pulled out his handkerchief and tied the youth’s leg. A security guard from Sears came and soon an *167 ambulance arrived and took the child, her sister and their mother to the hospital but not before the Nassau County police responded to the scene. When asked at the same deposition on July 19, 1999 whether she remembered what cut her leg, the infant plaintiff said, “Yes” and described it as, “I put my hand like so and something black — and there was something silver, and I put my leg close to it.” The infant plaintiffs mother and grandmother testified at depositions that they did not know what part of the escalator injured the infant plaintiff.
Frank Gentile, the Asset Protection Manager for this Sears store at the time of the accident in 1996, testified at an examination before trial on February 8, 2000. Gentile testified his department and the Sears security guards conducted regular, routine store inspections for defective or dangerous conditions there, including daily escalator inspections by his department. This manager also testified he was unaware of any injuries on the store’s escalators prior to the accident.
Gary Haynes, the third-party’s maintenance mechanic, testified at an examination before trial on February 8, 2000. The mechanic testified he performed routine maintenance on the escalator every other week, including adjusting the handrails, changing the comb sections, greasing the bearings and changing the belts. Haynes testified his work also included an inspection of the escalator on each visit by riding it, checking its speed and any protrusions. The mechanic testified he never observed any protruding foreign objects in the year prior to the accident.
The third-party defendant Schindler Elevator Corporation claims the escalator was regularly inspected and maintained by a mechanic with 16 years’ experience. It contends there were no items protruding from the escalator steps, sidewalls or handrails.
The third-party defendant Schindler Elevator Corporation argues the plaintiffs cannot show it created or had actual or constructive notice of the allegedly dangerous condition because no one knows what injured the infant plaintiff. The third-party defendant Schindler Elevator Corporation contends the doctrine of res ipsa loquitur is inapplicable here because the plaintiffs cannot establish that the infant plaintiff was injured by an agency or instrumentality within the exclusive control of the third-party defendant.
The defendant Sears, Roebuck and Co. claims it is not liable to the plaintiffs as a matter of law because the plaintiffs have failed to show that any dangerous condition existed at the time *168 of the incident. Sears, Roebuck and Co. also argues the plaintiffs cannot show that it created a condition or had actual or constructive notice of a condition for which the defendant Sears, Roebuck and Co. can be held responsible.
The plaintiffs allege that the injury resulted from the negligence of the defendants.
Legal Conclusions
The third-party complaint here is not dismissed. The third-party defendant’s motion to dismiss the third-party plaintiffs complaint is denied. On a motion to dismiss by the third-party defendant, the concern is whether the third-party complaint states a cause of action rather than the ultimate determination of the facts (see, Stukuls v State of New York, 42 NY2d 272, 275). “[A] motion to dismiss for failure to state a cause of action will be denied in its entirety where the complaint asserts several causes of action, at least one of which is legally sufficient and where the motion is aimed at the pleading as a whole without particularizing the specific causes of action sought to be dismissed” (Martirano Constr. Corp. v Briar Contr. Corp., 104 AD2d 1028, 1029). The third-party defendant does not indicate what cause of action it specifically seeks to dismiss. In the instant case, the third-party complaint adequately alleges a cause of action against Schindler Elevator Corporation. There is a service contract between the third-party plaintiff and third-party defendant which requires the third-party defendant to maintain the escalator in question.
Under CPLR 3212 (b), a motion for summary judgment “shall show that there is no defense to the cause of action or that the cause of action or defense has no merit. The motion shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party * * * [T]he motion shall be denied if any party shall show facts sufficient to require a trial of any issue of fact.”
Summary judgment is a drastic remedy that is awarded only when it is clear that no triable issue of fact exists (Alvarez v Prospect Hosp., 68 NY2d 320, 325; Andre v Pomeroy, 35 NY2d 361). Summary judgment is the procedural equivalent of a trial (Museums at Stony Brook v Village of Patchogue Fire Dept., 146 AD2d 572). Thus, the burden falls upon the moving party to demonstrate that, on the facts, it is entitled to judgment as a matter of law (see, Whelan v GTE Sylvania, 182 AD2d 446). "Here, in view of the applicable legal standards, *169 plaintiffs’ causes of action can be sustained. The complaint must not be dismissed.
The court’s role is issue finding rather than issue determination (see, e.g., Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395; Gervasio v Di Napoli, 134 AD2d 235, 236; Assing v United Rubber Supply Co., 126 AD2d 590). Nevertheless, “ ‘the court must evaluate whether the alleged factual issues presented are genuine or unsubstantiated’ ” (Gervasio v Di Napoli, supra, 134 AD2d, at 236, quoting Assing v United Rubber Supply Co., supra; see, Columbus Trust Co. v Campolo, 110 AD2d 616, affd 66 NY2d 701). If the issue claimed to exist is not genuine and, therefore, there is nothing to be resolved at the trial, the case should be summarily decided (see, Andre v Pomeroy, 35 NY2d, supra, at 364; Assing v United Rubber Supply Co., supra).
As an evidentiary principle, res ipsa loquitur permits the trier of fact to draw an inference of negligence from the very nature of the accident and the defendant’s relation to it (see, Dermatossian v New York City Tr. Auth., 67 NY2d 219, 226; Pavon v Rudin, 254 AD2d 143). However, before this principle can be applied, it must first be determined whether the facts of the accident warrant its application (see, Weeden v Armor El. Co., 97 AD2d 197). “Submission of a case on the theory of res ipsa loquitur is warranted only when the plaintiff can establish three elements: ‘(1) the event must be of a kind which ordinarily does not occur in the absence of someone’s negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.’ ” (See, Ebanks v New York City Tr. Auth., 70 NY2d 621, 623; see also, Prosser, Torts § 39, at 214 [4th ed].) If these prerequisites are met, a plaintiff may rest the action on circumstantial evidence, when the specific cause of the incident is unknown (Kambat v St. Francis Hosp., 89 NY2d 489, 494).
The event here is of a kind which ordinarily does not occur in the absence of someone’s negligence. There is nothing presented by the defendants which would show that this incident occurred due to any voluntary action or contribution on the part of the plaintiffs.
Where the particular cause of an accident is unknown, under the doctrine of res ipsa loquitur a jury could in certain circumstances infer negligence merely from the happening of an event and the defendant’s relation to it (see, Abbott v Page Airways, *170 23 NY2d 502, 510; Restatement [Second] of Torts § 328 D, comments a, b). Res ipsa loquitur “simply recognizes what we know from our everyday experience: that some accidents by their very nature would ordinarily not happen without negligence” (Dermatossian v New York City Tr. Auth., 67 NY2d, supra, at 226).
Res ipsa loquitur calls for little more than the application of the familiar rules of circumstantial evidence to certain unusual circumstances (see, Prosser and Keeton, Torts § 40, at 257 [5th ed]). A plaintiff need not decisively eradicate the possibility of all other causes of the incident to depend upon res ipsa loquitur (Kambat v St. Francis Hosp., supra). It is sufficient that the evidence supporting the three considerations yield a rational foundation for coming to a finding that “it is more likely than not” that the incident was caused by defendant’s negligence (see, Restatement [Second] of Torts § 328 D, comment e). What is required is that the likelihood of other likely causes of the incident “be so reduced that the greater probability lies at defendant’s door” (2 Harper and James, Torts § 19.7, at 1086 [1st ed]). So, res ipsa loquitur is appropriate when, “upon ‘a commonsense appraisal of the probative value’ of the circumstantial evidence * * * [the] inference of negligence is justified” (George Foltis, Inc. v City of New York, 287 NY 108, 115).
The Second Department has been flexible in the area of personal injury where the evidence warranted a submission to the trier of fact on a res ipsa loquitur theory of recovery (Bonventre v Max, 229 AD2d 557; Zurlo v Metropolitan Tr. Auth., 184 Misc 2d 988 [App Term, 2d Dept]). In Bonventre, as here, the Appellate Division considered the paramount issue was the second element of the three-part test of the res ipsa loquitur theory. The Appellate Division unanimously held that “[t]he plaintiff need not have shown that the defendants were the only ones in control * * * but she must have shown that the defendants’ control was of ‘sufficient exclusivity to fairly rule out the chance that any purported defect’ was caused by some other agency [citation omitted]” (Bonventre v Max, supra, at 558). Under these circumstances, the security guard and the surveillance camera near the escalator monitored the use of the escalator by the public. As the Second Department observed in Bonventre, while the public may use something, that does not explain the misfortune here. Moreover, these circumstances are sufficient to raise a genuine issue of material fact together with the infant plaintiffs statements regarding the nature and character of what caused her injury coupled with the supervi *171 sory roles and reactions of the mother and grandmother and the statements of the store security guard. Further, the Appellate Term, in Zurlo v Metropolitan Tr. Auth. (supra), held the defendants’ negligence was probably the cause of the accident to the plaintiff and probably not the negligence of another, so the res ipsa loquitur theory was appropriate.
The other State Judicial Departments have decided like the Second Department in similar personal injury matters, including the Fourth Department in Durso v Wal-Mart Stores (270 AD2d 877) and the First Department in Wen-Yu Chang v Woolworth Co. (196 AD2d 708). In Chang, an action was brought for a 3V2-year-old girl injured when, as here, the infant was a passenger on an escalator operated by the defendant retailer inside its retail premises and maintained by another defendant under a service contract. The infant there sustained injury to her right leg when it became wedged between the moving stairs and the side panel. The trial court denied the plaintiffs’ request to charge the jury on res ipsa loquitur. The Appellate Division unanimously set aside the jury verdict in favor of the defense and remanded the matter for a new trial.
The Appellate Division in Chang (supra) focused on the holding in Ebanks v New York City Tr. Auth. (70 NY2d 621, supra). The Chang Court found that exclusivity of control is “a relative term, not an absolute,” because the permissible inference of negligence under the res ipsa loquitur doctrine is grounded on the remoteness of any probability that the negligent act was caused by someone other than the defendant (Weeden v Armor El. Co., 97 AD2d, supra, at 206). The plaintiff need not exclude every other possible cause (Nesbit v New York City Tr. Auth., 170 AD2d 92, 98). Thus, the doctrine of res ipsa loquitur can be applied even where more than one defendant is in a position to exercise exclusive control (see, Myron v Millar El. Indus., 182 AD2d 558, 559; Duke v Duane Broad Co., 181 AD2d 589, 591, lv denied 81 NY2d 703).
Ebanks (supra) does not remove escalator mishaps from the scope of res ipsa loquitur (Wen-Yu Chang v Woolworth Co., supra). The motion court must review all the relevant circumstances to ascertain whether there is any material issue of fact. Several peculiarities in the matter here distinguish this case from Harvey v Silver Dollar Shows (274 AD2d 452) and Wang v Alexander’s Dept. Store (247 AD2d 467), which are the legal precedent heavily relied upon by the defendant Sears on the res ipsa loquitur issue. Harvey is a matter where the infant plaintiff suffered a broken leg discovered after leaving an *172 amusement ride at a fair while Wang is an escalator case. And, despite whether the escalators in the instant matter and Wang were available to considerable access by people, that factor alone does not require summary judgment on the question of exclusive control. There is nothing presented by the defendants to show that this circumstance was caused by someone or something else. Instead, the infant plaintiff remembers what cut her leg was “something black — and * * * something silver” near her leg when she was injured on the escalator. Also significant, in our view, is the undisputed fact that Edgarton Boyer, a store employee acting as a store detective, saw the infant plaintiff on the escalator. In a written accident report on a Sears, Roebuck and Co. form, Boyer described the incident as follows: “I was walking through the cosmetics dept, and noticed the mother picking up the child who was in front of her on the escalator an [sic] moments later I heard the mother screaming.” Boyer also states in another section of the written form which he filled in with his own handwriting that at the time of the accident he was “in the CCTV Room.” That is the place for video surveillance of the escalator and other parts of the store. Boyer further states that what he saw in detail was, “while traveling down the esculator [sic] with parent the child was injored [sic].” These statements demonstrate an unambiguous exercise of control greatly diminishing the possibility of something else as a causal factor.
Accordingly, it is ordered that the third-party defendant’s motion for summary judgment against the plaintiffs and dismissing the third-party plaintiffs cross claim is denied; and it is ordered that defendant’s motion for summary judgment against the plaintiffs is also denied.